## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

MARK F. WHITE and

NNIKA E. WHITE,

           Debtors.

Case No. 14-36232-KRH
Chapter 13

## RESPONSE OF THE U.S. TRUSTEE
## REGARDING ORDER TO SHOW CAUSE

     Judy A. Robbins, U.S. Trustee for Region Four (the "United States Trustee"), by counsel, states the following regarding this Court's Order to Show Cause entered in the above captioned case on October 20, 2015 (the "Show Cause Order").

### Background

1.     This case was filed as a voluntary chapter 13 on November 19, 2014.

2.     As stated in this Court's Show Order, the debtors, Mark and Nnika White ("Mr. White" or "Ms. White" and collectively, the "Debtors") have filed various plans (four in total) during the course of this case.

3.     To date, none of the plans have been confirmed.

4.     The genesis of this Court's Show Cause Order arises from the Debtors' third plan and the

Robert B. Van Arsdale, AUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street - Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (804) 771-2330

United States Trustee's objection, which was scheduled to be heard by this Court on October 14, 2015 (continued from September 2, 2015).

5.      On September 1, 2015, one day before the confirmation hearing scheduled for September 2, 2015, the United States Trustee learned from Carl M. Bates, chapter 13 trustee, that a check in the amount of $27,225.00 drawn from the operating account for the Law Office of White & Associates had just posted in the bankruptcy case of Tamara Crews ("Ms. Crews"), Bankruptcy Case Number 14-35243-KLP.  A copy of the check is attached hereto as Exhibit A.

6.      The United States Trustee currently has actions pending against Ms. White (the "United States Trustee's Motion") in the cases of Tamara Crews, Bankruptcy Case Number 14-35243-KLP (the "2014 Crews Case") and 12-31264-KLP (the "2012 Crews Case") (the cases shall be referred to collectively hereafter as the "Crews Cases").

7.      The 2012 Crews Case was reopened for the purpose of filing the United States Trustee's Motion.

8.      Hearing on the Unites States Trustee's Motion is scheduled for December 15, 2015.  A copy of the United States Trustee's Motion filed in the Crews Cases is attached hereto as Exhibit B.

9.      In the pleadings filed, the United States Trustee seeks to review Ms. Crews' transactions with Ms. White and for the imposition of sanctions against Ms. White, including possible suspension from this Court.

10.     On June 17, 2015, the Third District Subcommittee (the "VSB Subcommittee") issued a Certification to the Virginia State Bar Disciplinary Board against Ms. White (the "VSB Certification").   A copy of the VSB Certification was attached as an exhibit to the United States Trustee's Motion in the Crews Cases.

11.      In the VSB Certification, among various other allegations of misconduct, the

Subcommittee alleged that Ms. White violated various Rules of Professional Conduct in her

representation of Ms. Crews in her bankruptcy cases.[1]

12.      Hearing on the VSB Certification is scheduled for November 20, 2015.

13.      By way of summary of the United States Trustee's Motion in the Crews Cases, the

United States Trustee received a copy of the VSB Certification, which suggests that Ms. White

assisted Ms. Crews in hiding a substantial inheritance of $50,074.58 (the "Inheritance") from the

chapter 13 trustee during the pendency of the 2012 Crews Case.

14.      In addition to failing to disclose the Inheritance to the chapter 13 trustee in the 2012

Crews Case, during the pendency of the case, Ms. White deposited the Inheritance into her law

firm's bank account and paid to herself or her law firm the sum of  $33,490.00 for alleged legal

fees dating back to 2005.[2]

15.      Shortly thereafter, an Order was entered dismissing the 2012 Crews Case.

16.      On September 29, 2014, less than two (2) weeks after Ms. White deposited the

Inheritance into her law firm's bank account and disbursed $33,490.00 to herself or her law firm

for the alleged legal fees, Ms. Crews, with the assistance of Ms. White, filed the 2014 Crews

Case.

17.      A review of the schedules and statement of financial affairs filed in the 2014 Crews Case

reveals that there is no disclosure of the $33,490.00 payment to Ms. White nor is there any

disclosure that she is holding additional funds belonging to Ms. Crews, which would have been

---

[1] Specifically, with regard to the representation of the Debtor, the Subcommittee alleges that Ms. White has violated the following provisions of Professional Conduct:  a) Rule 1.1 (Competence), b) Rule 1.7 (Conflict of Interest), c) Rule 1.15 (Safekeeping Property), d) Rule 3.3 (Candor Toward the Tribunal), e) Rule 4.1 (Truthfulness In Statements To Others), and f) Rule 8.4 (Misconduct).

[2] Neither Ms. White nor her law firm is listed as a creditor in the 2012 Crews' Case.

properly listed on Schedule B as part of Ms. Crews' estate.

18.     Based on the United States Trustee's Motion, the United States Trustee issued discovery in the Crews Cases, to which a partial response has been received.

19.     As part of her response to the discovery, Ms. White included a copy of her alleged contract with Crews and alleged legal bills dating back to 2005.  Copies of the alleged contract and legal bills are attached hereto as Exhibit C and D, respectively.

20.     Subsequent to the filing of the United States Trustee's Motion in the Crews Cases, Ms. White issued a check in the amount of $27,225.00 drawn on her law firm's bank account to the chapter 13 trustee in the 2014 Crews Case.

21.     This would appear to be an effort on the part of Ms. White to pay back a portion of the $33,490.00 which she received from Ms. Crews in September 2014 (prior to filing of Ms. White's bankruptcy case in November 2014).

22.     In fact, Ms. White filed a response to the United States Trustee's Motion in the Crews Cases, which supports this belief.  Paragraph 15 of the response states that "all funds from the $33,400 [sic] that were paid to the Law Firm of White & Associates have been returned either to Crews or to the Chapter 13 Trustee."  A copy of the response is attached hereto as Exhibit E.

23.     The U.S. Trustee is uncertain of the reason for the payment of $27,225.00 as opposed to the full amount of $33,490.00.

24.     On October 20, 2015, Suzanne E. Wade, chapter 13 trustee in the instant case, filed a Motion To Convert Case From Chapter 13 To Chapter 7 ("Motion To Convert"), which matter is also set for hearing on November 4, 2015 along with this Court's Show Cause.

25.     In the Motion To Convert, the chapter 13 trustee alleges a) that the Debtors are in payment default in the amount of $4,575.98, b) expresses concern with the propriety of the

$27,225.00 paid from Ms. White's law firm account into the 2014 Crews Case and c) questions the accuracy of disclosure of income and assets by the Debtors.

26.     The United States Trustee shares the concerns of the chapter 13 trustee and supports conversion of the Debtors' case.

27.     As of the date of this response, the Debtors remain behind on their plan payments in the amount of $4,575.98.

## United States Trustee's Concerns

28.     During the almost one year period that the Debtors' bankruptcy case has been pending, the United States Trustee has had serious concerns with the accuracy of the disclosure in the Debtors' schedules.

29.     The Unites States Trustee was further concerned that the Debtors' initial plan proposed to pay only 5% to unsecured creditors and included payment of legal fees to Ms. White's law firm to the detriment of unsecured creditors.

30.     Based on the United States Trustee's concerns with the information contained in the original schedules and plan and the low plan percentage, the United States Trustee requested documentation from the Debtors, including but not limited to, bank statements, tax returns, general ledgers, and income statements.

31.     The United States Trustee has performed a detailed analysis of the business and personal financial records of the Debtors as provided; and it appears that the Debtors have significantly understated their household income in each of the various plans presented to this Court.

32.     In reviewing the records of the Debtors, the United States Trustee observed very few transactions in the Debtors' personal bank accounts.  The vast majority of Debtors' expenses are paid through the law firm's bank accounts or with a credit card, which is then paid with the law

firm's bank account.

33.     The Debtors failed to properly include the payment of personal expenses by the law firm

for their benefit as income to them on their bankruptcy schedules causing a gross understatement

of income.

34.     Upon review of the general ledger, income statement and tax return for the law firm, it

appears that these personal expenses are improperly classified as business costs.

35.     In addition, the income statement for the law firm provided to the United States Trustee

(in an effort to support the claimed income of the Debtors) suggests that Ms. White's law firm

made a net profit of only $2,278.98.  The United States Trustee's analysis indicates that this net

profit is a gross understatement of the true net profit of the law firm.

36.     As stated in the objection to the third plan, the United States Trustee believes that the true

household income for the Debtors as of the petition date was approximately $280,000.00 per

year, which is substantially higher than the $90,000.00 household income originally disclosed by

the Debtors.

37.     This apparent understatement of income was particularly disturbing to the United States

Trustee given that the original plan proposed only a 5% distribution.

38.     It was only after receiving the document request from the United States Trustee that the

Debtors modified their plan to pay 100% to unsecured creditors, albeit with a large step up in

payments.

39.     Additionally, it appears that assets were not originally disclosed or were substantially

undervalued in the Debtors' schedules.  Specifically, by way of example and not for purposes of

showing all noted issues, on their schedules as originally filed, the Debtors failed to disclose any

life insurance whatsoever.  It was only after the United States Trustee requested documentation

that the Debtors amended their schedules to disclose not only the existence of life insurance, but three life insurance policies with cash value.

40.     Additionally, on their original schedules, the Debtors disclose the "Law Office of White & Associates- LLC" as jointly owned by Mr. White and Mrs. White with a value of 0.00.[3]

41.     To date, the value of the law firm remains listed as a value of $0.00.

42.     The United States Trustee would assert that this valuation of the law firm is a substantial understatement.

43.     With each subsequent plan filed by the Debtors, the United States Trustee observes that the Debtors would alter the household income slightly upward and alter the household expenses.

44.     For the first time, in the fourth plan filed on October 13, 2015 (almost a year after the case was filed), the Debtors disclose expenses on Schedule J such as "Millwood Education" in the amount of $1,435.00 and "St. Chris Education" in the amount of $870.83.[4]

45.     Based on the United States Trustee's review of the Debtors' documentation, these expenses existed as of the petition date.  The United States Trustee is not sure why they are appearing for the first time in the fourth plan almost a year after the case was originally filed.

46.     Other than adjustments to Schedule I and J attached to the fourth plan, the plan remains identical to the previous plan filed by the Debtors.

47.     The United States Trustee still believes that the income remains substantially understated.

48.     The United States Trustee came prepared to go forward at the hearing scheduled before this Court on October 14, 2015, based on the clear instruction of this Court at the September

---

[3] Upon information and belief, Mr. White is not a lawyer.  Pursuant to the Rules of Professional Conduct, the United States Trustee does not believe that it is permissible for a non-lawyer to have an ownership interest in a law firm that practices law.

[4] This is not a comprehensive list of the changes observed on Schedule J attached to the fourth plan, but raised by way of example.

hearing, but was not comfortable proceeding in the absence of Ms. White.

49.     The United States Trustee also has concerns because the fourth plan bears the electronic

signature of Nisha Patel, Esquire, who has not been employed by Ms. White's law firm for some

time.

50.     Based on the testimony of Nisha Patel at the hearing on October 14, 2015, it became

apparent that she had not authorized any such filing, which causes further concern.

51.     This Court issued a deficiency to Ms. White on October 15, 2015 regarding the signatures

on the fourth plan; however, to date, Ms. White has not filed a corrected plan with appropriate

signatures.

52.     The Unites States Trustee is concerned that, to date, and despite this Court's deficiency

notice, no effort has been made by Ms. White to remove Nisha Patel's name from the fourth

plan.

53.     In addition to the concerns with disclosure in the Debtors' case and the wrongful

placement of Nisha Patel's name on Ms. White's plan, the United States Trustee questions the

propriety of the payment by Ms. White's law firm of $27,225.00 into the 2014 Crews Case.

54.     The repayment appears to be an effort to pay back the money that was wrongfully taken

by Ms. White from the bankruptcy estate in the 2012 Crews Case.

55.     Because of the intervening bankruptcy filed by Ms. White, the United States Trustee is

not certain it is appropriate for Ms. White to use her estate's funds to pay back Ms. Crews, who,

unfortunately, would seem to be a creditor in the case of Ms. White (albeit undisclosed).

56.     The United States Trustee has serious concerns with the behavior of Ms. White, as an

Officer of this Court, in both her personal bankruptcy case and the Crews Cases.

Respectfully submitted,

Judy A. Robbins
United States Trustee
Region Four

by /s/Shannon Pecoraro
Shannon Pecoraro, Esquire
Virginia State Bar No. 46864
Office of the U.S. Trustee
701 E. Broad Street, Suite 4304
Richmond, VA 23219
(804) 771-2310
Fax: (804) 771-2330
shannon.pecoraro@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2015, a true copy of the foregoing was delivered  via electronic  mail pursuant to the Administrative Procedures of the CM/ECF System for the United States Bankruptcy Court for the Eastern District of Virginia to all necessary parties.  In addition, a copy was mailed to the following:

Mark F. White
Nnika E. White
4600 Jennway Loop
Moseley, VA   23120

/s/Shannon Pecoraro
Shannon Pecoraro
Virginia State Bar No. 46864
Office of the U.S. Trustee
701 E. Broad Street, Suite 4304
Richmond, VA 23219
(804) 771-2310
Fax: (804) 771-2330
shannon.pecoraro@usdoj.gov



**SunTrust Lockbox Services**

**End Of Day Detail Report**

13DE Bates, Carl      1433    08/31/2015

---

Check No: 00090855 ▓▓▓▓▓▓▓▓▓▓ Amount: $27,225.00 Batch: 346 Transaction: 1 Image: 1

---

90855

**LAW OFFICE OF WHITE & ASSOCIATES**
NNIKA EVANGELINE WHITE, OPER. ACCT.
9101 MIDLOTHIAN TURNPIKE, SUITE 800
RICHMOND, VIRGINIA 23235

DATE  8-27-15                68-54/514

PAY TO THE ORDER OF  Carl Bates, Ch 13 Trustee          $ 27,225 00/100

Twenty Seven Thousand, Two Hundred Twenty-Five and No/100 DOLLARS

Wells Fargo, N.A.

FOR  Tamara Crews - 14-35243

⊥290

---

EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 13 |
| TAMARA SUE CREWS, | ) | Case Number 12-31264-KLP |
| | ) | Case Number 14-35243-KLP |
| ___Debtor.___ | ) | |
| | ) | |
| JUDY A. ROBBINS, | ) | |
| United States Trustee For Region Four, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| TAMARA SUE CREWS | ) | |
| and | ) | |
| NNIKA E. WHITE | ) | |
| and | ) | |
| THE LAW OFFICE OF WHITE & | ) | |
| ASSOCIATES, PLLC | ) | |
| | ) | |
| ___Respondents.___ | ) | |

## NOTICE OF UNITED STATES TRUSTEE'S MOTION TO EXAMINE TRANSACTIONS WITH DEBTOR'S ATTORNEY AND FOR IMPOSITION OF SANCTIONS AND HEARING THEREON

PLEASE TAKE NOTICE that the United States Trustee has filed with the Court a **Motion To Examine Transactions With Debtor's Attorney And For Imposition of Sanctions** (the "Motion") in the above-captioned case. A copy of the Motion is being served on you simultaneously herewith.

**<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

---

Robert B. Van Arsdale, Esq., AUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (804) 771-2330

If you do not want the Court to grant the relief sought in the Motion or if you want the Court to consider your views on the Motion, then on or before **seven (7) days** before the scheduled hearing date on the Motion, you or your attorney must:

( X )   File with the Court, at the address below, a written response with supporting memorandum pursuant to Local Bankruptcy Rule 9013-1(H).  You must mail or otherwise file it early enough so the Court will **receive** it on or before the date stated above.

Clerk of Court
United States Bankruptcy Court
701 East Broad Street, Suite 4000
Richmond, Virginia 23219

You must also serve a copy on:

Robert B. Van Arsdale, AUST
Shannon Pecoraro, Esq.
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

( X )   Attend a hearing on the Motion which has been scheduled for **October 20, 2015 at 10:00 a.m.** before the Honorable Keith L. Phillips at the United States Bankruptcy Court, 701 East Broad Street, Suite 5100, Richmond, VA 23219.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that requested relief without further notice or hearing.

Date:  August 14, 2015

JUDY A. ROBBINS
United States Trustee
Region Four

/s/ Robert B. Van Arsdale
Robert B. Van Arsdale, AUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

## CERTIFICATE OF SERVICE

I, the undersigned do hereby certify that on August 14, 2015, I caused to be mailed a true and correct copy of the above and foregoing, with postage fully prepaid herein, via U.S. Mail,  to the following parties:

Tamara Sue Crews
11955 Mountain Laurel Drive
Richmond, VA 23236

The Court has electronically mailed the document to the following persons or all other necessary parties, including, the Debtor's attorney and the Chapter 13 Trustee via the CM/ECF system.

/s/ Robert B. Van Arsdale
Robert B. Van Arsdale, Esq., AUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (704) 771-2330

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 13 |
| TAMARA SUE CREWS, | ) | Case Number 12-31264-KLP |
| | ) | Case Number 14-35243-KLP |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| JUDY A. ROBBINS, | ) | |
| United States Trustee For Region Four, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| TAMARA SUE CREWS | ) | |
| and | ) | |
| NNIKA E. WHITE | ) | |
| and | ) | |
| THE LAW OFFICE OF WHITE & | ) | |
| ASSOCIATES, PLLC | ) | |
| | ) | |
| _____Respondents._____ | ) | |

**UNITED STATES TRUSTEE'S MOTION**
**FOR REVIEW OF TRANSACTIONS WITH DEBTOR'S ATTORNEY**
**AND FOR THE IMPOSITION OF SANCTIONS**

Judy A. Robbins, the United States Trustee for Region Four (the "U.S. Trustee") hereby

moves this Court, pursuant to §§105 and 329 of Title 11 of the United States Code, 11 U.S.C. §§

101, et seq. (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2017 (the

"Bankruptcy Rules" and each a "Bankruptcy Rule"), to examine the Debtor's transactions with

Robert B. Van Arsdale, Esq., AAUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (804) 771-2330

and fees paid to the above-captioned debtor's attorney, Nnika E. White, and The Law Office of

White & Associates, PLLC, and for entry of an Order (a) directing the disgorgement of fees, (b)

imposing sanctions and penalties as the Court deems appropriate, and (c) suspending Nnika E.

White for a reasonable time from practicing before the United States Bankruptcy Court for the

Eastern District of Virginia.  In support of this motion, the U.S. Trustee states the following:

### Parties

1.       Judy A. Robbins is the United States Trustee for Region Four.

2.       Tamara Sue Crews (the "Debtor") is a debtor in Bankruptcy Case Number 14-

35243-KLP (the "2014 Case"), a Chapter 13 case pending with this Court.  The Debtor also filed

a previous Chapter 13 case, Bankruptcy Case Number 12-31264-KLP (the "2012 Case").  The

2012 Case and the 2014 Case shall be referred to collectively hereafter as the "Bankruptcy

Cases."

3.       Carl M. Bates (the "Chapter 13 Trustee") serves as Chapter 13 Trustee in the

2014 Case.

4.       Suzanne E. Wade served as chapter 13 trustee in the 2012 Case upon the

retirement of Robert E. Hyman in December 2014.

5.       Nnika E. White ("Ms. White") is an attorney licensed in the Commonwealth of

Virginia and currently represents the Debtor in the 2014 Case and also represented the Debtor in

the 2012 Case.

6.       Ms. White is the owner and operator of The Law Office of White & Associates,

PLLC, located in Richmond, Virginia (the "Law Firm").

7.       Ms. White routinely files bankruptcy cases on behalf of individuals and appears

before this Court.

8.    Ms. White is also a debtor in bankruptcy case 14-36232-KRH, which case was filed as a joint Chapter 13 case with Ms. White's husband.[1]

## Jurisdiction and Venue

9.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and1334 and Bankruptcy Code §§ 105 and 329 and Bankruptcy Rule 2017.

10.    This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A) and (J).

11.    Venue is proper before the Court pursuant to 11 U.S.C. §§ 1408 and 1409.

## Preliminary Statement

12.    On June 17, 2015, the Third District Subcommittee (the "VSB Subcommittee") issued a Certification to the Virginia State Bar Disciplinary Board against Ms. White (the "VSB Certification").   A copy of the VSB Certification is attached hereto as Exhibit A.

13.    In the VSB Certification, among other allegations of misconduct, the Subcommittee alleges that Ms. White violated various Rules of Professional Conduct in her representation of the Debtor in the Bankruptcy Cases.[2]

14.    Hearing on the VSB Certification is scheduled for November 20, 2015.

15.    The allegations in the VSB Certification give rise to this Motion.

---

[1] Though Ms. White is in a personal bankruptcy case, the U.S. Trustee would assert that she is not barred by the automatic stay pursuant to Bankruptcy Code § 362(b)(4), which provides that "the filing of a petition under section 301, 302, or 202 of this title, . . . does not operate as a stay. . .[u]nder paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."

[2] Specifically, with regard to the representation of the Debtor, the Subcommittee alleges that Ms. White has violated the following provisions of Professional Conduct:  a) Rule 1.1 (Competence), b) Rule 1.7 (Conflict of Interest), c) Rule 1.15 (Safekeeping Property), d) Rule 3.3 (Candor Toward the Tribunal), e) Rule 4.1 (Truthfulness In Statements To Others), and f) Rule 8.4 (Misconduct).

## **Background – 2012 Case**

16.     On February 29, 2012, the Debtor, with the assistance of Ms. White, filed the

2012 Case under Chapter 13 of the United States Bankruptcy Code.

17.     Simultaneous with the filing of the petition, the Debtor, with the assistance of Ms.

White, filed the schedules, statement of financial affairs, and Chapter 13 plan.

18.     On October 16, 2012, the Debtor, with the assistance of Ms. White, filed amended

schedules.

19.     The Debtor indicates on Schedule I that she is disabled and that her sources of

income are social security and disability.

20.     Upon review of the original schedules and amended schedules filed in the 2012

Case, it appears neither Ms. White nor the Law Firm is listed as a creditor of the Debtor.

21.     On August 6, 2014, Robert E. Hyman, the Chapter 13 Trustee in the 2012 Case,

filed a Motion to Dismiss Case For Failure To Make Plan Payments Pursuant To 11 U.S.C

1307(c)(4) and 1307(c)(6) (the "Motion To Dismiss").[3]

22.     On September 17, 2014, a hearing was held on the Motion To Dismiss.

23.     Per the Court's docket notes, the Motion To Dismiss was uncontested by the

Debtor.

24.     On September 18, 2014, an Order was entered dismissing the 2012 Case.

25.     The Disclosure of Compensation filed in the 2012 Case indicates that Ms. White

received $269.00 in legal fees up front in the case.

26.     The Final Report filed in the 2012 Case indicates that Ms. White received an

additional sum of $3,359.00 through the Debtor's Chapter 13 plan.

---

[3] Robert E. Hyman retired on December 31, 2014; and Suzanne E. Wade took over as Chapter 13 Trustee in the 2012

## Background – 2014 Case

27.     On September 29, 2014, the Debtor, with the assistance of Ms. White, filed the 2014 Case as a skeletal filing under Chapter 13 of the Bankruptcy Code.

28.     Though Ms. White also represented the Debtor in the 2012 Case, the petition filed in the 2014 Case fails to list the 2012 Case as a prior bankruptcy case filed within the last eight (8) years.

29.     On October 7, 2014, the Debtor, with the assistance of Ms. White, filed a Motion to Extend Automatic Stay Pursuant to 11 U.S.C. § 362(c)(3)(B) (the "Motion To Extend Stay"). On October 29, 2014, this Court entered an Order granting the Motion To Extend Stay.

30.     On October 21, 2014, the Debtor, with the assistance of Ms. White, filed an Affidavit in support of the Motion To Extend Stay.

31.     In the Affidavit, the Debtor asserts that she filed the 2012 Case in good faith, but fell behind in the plan payments when her mother passed away without life insurance or a burial policy; and she was forced to pay for her mother's funeral on her own.  She further asserts that she could not "afford to make her plan payments while paying for her mother's funeral."

32.     Also on October 21, 2014, the Debtor, with the assistance of Ms. White, filed her schedules, statement of financial affairs and chapter 13 plan.

33.     The Debtor indicates on Schedule I that she is disabled and that her sources of income are social security and disability.

34.     The Disclosure of Compensation filed in the 2014 Case indicates that Ms. White received $369.00 in legal fees up front in this case.

35.     Ms. White seeks payment of $4,631.00 through the chapter 13 plan in the 2014

Case.

Case.

36.    Upon review of the Chapter 13 Trustee's website as of the date of this Motion, it

appears Ms. White has received legal fees through the Debtor's chapter 13 plan of $2,850.00.

37.    On July 31, 2015, based on the allegations in the VSB Certification, the Chapter

13 Trustee filed a Motion By Trustee To Convert Case From Chapter 13 To Chapter 7 (the

"Motion To Convert"), which matter is scheduled for hearing on September 2, 2015.

38.    In the Motion To Convert, the Chapter 13 Trustee asserts that "it appears that the

debtor paid her attorney, Nnika E. White, $33,490.00 approximately two weeks prior to filing the

instant case . . . for outstanding legal fees for services unrelated to the bankruptcy case and

dating back to 2005.  This payment was not disclosed in the debtor's Statement of Financial

Affairs and your Trustee did not become aware of the payment until after confirmation of the

plan."

39.    The Trustee further asserts in his Motion To Convert that the payment is a

preference avoidable under § 547 of the Bankruptcy Code, and that, therefore, conversion to

Chapter 7 is appropriate and in the best interests of creditors.

## The VSB Certification

40.    As stated previously, on June 17, 2015, the VSB Subcommittee filed the VSB

Certification.

41.    In the VSB Certification, the VSB Subcommittee asserts various allegations of

misconduct by Ms. White, including misconduct in connection with the Bankruptcy Cases filed

by Ms. White on behalf of the Debtor.

42.    According to the VSB Certification, Ms. White represented the Debtor in various

matters since 2005; and, at the time of the 2012 Bankruptcy, was a general creditor of the

Debtor.

43.     Upon review of the original schedules and amended schedules filed in the 2012

Case, it appears Ms. White failed to disclose that she was a general creditor of the Debtor.

44.     According to the VSB Certification, as early as July 15, 2014, prior to the

dismissal of the 2012 Case, Ms. White and the Debtor had discussions about payments the

Debtor would receive from a stock disbursement.

45.     According to the VSB Certification, on or about September 10, 2014, the Debtor

received two (2) checks payable to her totaling $50,074.58 from TIAA-CREF, which represent

inheritance from a cousin (the "Inheritance").

46.     According to the VSB Certification, on or about September 16, 2014 (after the

Motion To Dismiss the 2012 Case is filed by the Chapter 13 Trustee, but prior to the hearing on

the Motion To Dismiss or entry of an Order dismissing the 2012 Case), Ms. White deposited into

her Law Firm's trust account, the sum of $50,074.58 from TIAA-CREF, which, upon

information and belief, represents the Debtor's Inheritance.[4]

47.     According to the VSB Certification, immediately thereafter, Ms. White disbursed

to herself or her Law Firm the sum of $33,490.00 as payment for outstanding legal fees for prior

legal work dating back to 2005.

48.     According to the VSB Certification, in addition to the $33,490.00 payment, Ms.

White also deducted from the Inheritance, the sum of $679.00 for a bankruptcy filing fee and

$1,875.00 for "future bankruptcy payments," leaving remaining funds of $14,030.58 in the

possession of Ms. White.

---

[4] The U.S. Trustee has also reviewed the Law Firm's trust account in connection with the U.S. Trustee's
investigation of Ms. White's personal bankruptcy case, Bankruptcy Case Number 14-36232-KRH. The U.S. Trustee
has observed a deposit into the trust account in the amount of $50,074.58 dated September 16, 2014.

49.     On September 18, 2014, two (2) days after the deposit of the Inheritance into Ms. White's Trust account, this Court enters an Order dismissing the Debtor's 2012 Case.

50.     On September 29, 2014, less than two (2) weeks after Ms. White deposited the Inheritance into her Trust account and disbursed to herself or her Law Firm the sum of $33,490.00, the Debtor, with the assistance of Ms. White, filed the 2014 Case.

51.     Upon review of the schedules and statement of financial affairs filed in the 2014 Case, there is no disclosure by the Debtor of the $33,490.00 payment to Ms. White or her Law Firm.

52.     According to the VSB Certification, after the 2014 Case was filed, Ms. White distributed numerous sums of money from the Law Firm's operating account to the Debtor, which transactions are further detailed in the VSB Certification.

53.     Upon information and belief, Ms. White has not disclosed to this Court that she was holding funds belonging to the Debtor as of the filing date of the 2014 Case or that she has been issuing money to the Debtor while the 2014 Case is pending.

## Argument

54.     "Attorneys are responsible for maintaining the integrity of the judicial process." *In re Alvarado*, 363 B.R. 484, 490 (Bankr. E.D.Va. 2007).

55.     Ms. White, through her actions in these Bankruptcy Cases, has violated numerous provisions of the Virginia Rules of Professional Conduct.

56.     Specifically, Ms. White has violated:   a) Rule 1.1 (Competence), b) Rule 1.7 (Conflict of Interest), c) Rule 3.3 (Candor Toward the Tribunal), d) Rule 4.1 (Truthfulness In Statements To Others), and e) Rule 8.4 (Misconduct).

57.     The relevant provisions of the Virginia Rules of Professional Conduct provide as

follows:

    a.  Attorneys must provide competent representation to a client, which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Rule 1.1 of the Virginia Rules of Professional Conduct.*

    b.  Subject to very specific exceptions, a lawyer is precluded from representing a client if the representation involves a "concurrent conflict of interest", which exists if "there is significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." *Rule 1.7 of the Virginia Rules of Professional Conduct.* Comment 10 to Rule 1.7 of the Virginia Rules of Professional Conduct further states that "a lawyer may not allow business or personal interests to affect representation of a client."

    c.  "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal; (2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, subject to Rule 1.6. . ." *Rule 3.3 of the Virginia Rules of Professional Conduct.*

    d.  "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of fact or law; or (b) fail to disclose a fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client." *Rule 4.1 of the Virginia Rules of Professional Conduct.*

    e.  "It is professional misconduct for a lawyer to:  (a) violate or attempt to violate the Rules of Professional Conduct . . .  (b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law; (c) engage in conduct involving dishonesty, fraud, deceit or

misrepresentation which reflects adversely on the lawyer's fitness to practice law.

. ." *Rule 8.4 of the Virginia Rules of Professional Conduct.*

58.     As Judge Huennekens has stated, "[t] he critical function lawyers serve in society

comes with grave responsibility.  Lawyers are expected to adhere to recognized standards of

professional conduct."  *See In re Vaughan*, 2014 Bankr. LEXIS 168, at *3 (Bankr. E.D. Va.

January 15, 2014) (*citing In re Johnson*, 2008 Bankr. LEXIS 164, at *12 (Bankr. E.D. Va.

January 18, 2008).

59.     Ms. White has failed to adhere to the recognized standards of professional

conduct in these Bankruptcy Cases.

60.     Ms. White caused the Debtor, in both the 2012 Case and the 2014 case, to file

schedules and statements containing various misrepresentations for her own personal gain.

61.     Ms. White, while in the role of a fiduciary, also caused the Debtor to transfer to

her or her Law Firm, the sum of $33,490.00 to the detriment of the Debtor and the creditors of

the Debtor.

62.     In so doing, Ms. White placed herself in the position of having an interest directly

at odds with the Debtor.

63.     Upon information and belief, as early as July 2014 and prior to the dismissal of

the 2012 Case, Ms. White became aware of the Inheritance and failed to disclose it to this Court.

64.     Pursuant to the Fourth Circuit ruling in the case of *Carroll v. Logan*, 735 F.3d 147

(4th Cir., 2013), the Debtor was required to disclose and turn over the Inheritance to the chapter

13 trustee.  *See Carroll v. Logan,* 735 F.3d at 150 (stating that "Section 1306 broadens the

definition of property of the estate for chapter 13 purposes to include all property acquired and

all earnings from services performed by the debtor after the commencement of the case" and

"expand[s] the estate for Chapter 13 purposes by capturing the types, or 'kind,' of property described in Section 541 (such as bequests, devises, and inheritances), but not the 180-day temporal restriction").

65.    Not only was Ms. White aware of the Inheritance during the pendency of the 2012 Case, but on September 16, 2014, prior to the hearing on the dismissal of the 2012 Case, Ms. White deposited the Inheritance into her Trust Account and paid herself $33,490.00 and retained the remainder of the Inheritance in one of her Law Firm's bank accounts.[5]

66.    Not even two (2) weeks later, Ms. White filed the 2014 Case on behalf of the Debtor and failed to disclose a) the $33,490.00 payment paid to her or her Law Firm (which is required to be disclosed on the Statement of Financial Affairs)[6] and b) that she was holding funds belonging to the Debtor of no less than $14,030.58 (which is required to be disclosed on Schedule B).

67.    Ms. White caused the Debtor to make further misstatements to this Court in the Motion To Extend Stay and supporting Affidavit filed in the 2014 Case when it is stated that the Debtor's 2012 Case failed because she could not "afford to make her plan payments while paying for her mother's funeral."

68.    It is never mentioned in the Motion To Extend Stay or supporting Affidavit that the Debtor had just received the Inheritance, paid a large payment of $33,490.00 to Ms. White or her Law Firm, and that Ms. White was holding approximately $14,000.00 belonging to the Debtor.

---

[5] It is unclear whether the Inheritance funds belonging to the Debtor were held in Ms. White's Trust account or her Operating account. According to the VSB Certification, Ms. White issued funds to the Debtor from her operating account during the pendency of the 2014 Case.

[6] Statement of Financial Affairs Question 3(a) specifically requires the disclosure of payments to creditors within the 90 day period preceding the commencement of a case to the extent such payment exceeds $600.00 in the aggregate.

69.     All of these facts would have been extremely relevant to this Court in determining whether the filing of the 2014 Case within one year of the dismissal of the 2012 Case was in good faith and whether the automatic stay should have been extended.

70.     As a seasoned bankruptcy attorney, Ms. White should be well aware of a) the requirement for mandatory disclosure and turnover of the Inheritance to the chapter 13 trustee in the 2012 Case pursuant to Bankruptcy Code § 1306 and *Carrol v. Logan* , b) the requirement for mandatory disclosure in the 2014 Case of the $33,490.00 payment to her or her Law Firm, which occurred less than two weeks before the filing of the 2014 Case, and c) the relevance of the disclosure of the Inheritance and $33,490.00 payment in the Motion To Extend Stay, which would have likely affected this Court's determination of the Debtor's good faith in the filing of the 2014 Case.

71.     Based on the allegations in the VSB Certification, the Chapter 13 Trustee has filed a Motion To Convert the Debtor's case to Chapter 7.

72.     Ms. White's actions in these Bankruptcy Cases have caused harm to the Debtor and the creditors of the Debtor.

73.     The Debtor, with the assistance and guidance of Ms. White, filed bankruptcy schedules and statements of financial affairs in both Bankruptcy Cases under penalty of perjury that the information provided therein was true and correct.  However, there were numerous, material misrepresentations contained in the schedules and statements of financial affairs, which appear to have been for the benefit of Ms. White.

74.     The Debtor, also with the assistance and guidance of Ms. White, failed to disclose material facts to this Court in her Motion To Extend Stay and supporting Affidavit.  Again, the

non-disclosure appears to have been for the benefit of Ms. White.

75.    Given that Ms. White was aware of the Inheritance and, in fact, personally

benefitted by receiving a large payment from the Inheritance during the pendency of the 2012

Case and less than two (2) weeks prior to the filing of the 2014 Case, it would appear that Ms.

White knowingly assisted the Debtor in the various misrepresentations in the 2012 Case and

2014 Case.

76.    "When a lawyer files a document with a court, such as a federal bankruptcy court,

he or she takes an act of undeniable significance.  It is of course important to, and it has

potentially serious consequences for, his or her clients, who have entrusted their legal and

financial affairs to the skill and integrity of the lawyer.  It also has consequences-legally,

professionally and ethically-to the lawyer."  *In re Daw*, 2011 Bankr. LEXIS 279, at *1; 2011 WL

231362, at *1 (Bankr. D. Idaho Jan. 24, 2011) (citation omitted).

77.    The Court in *Daw* stated that "bankruptcy debtors rely on their attorney to

shepherd them through unfamiliar and complicated territory. . . and may not know that verifying

and signing papers that contain false or inaccurate information exposes them to loss of discharge

and, perhaps, criminal prosecution."  *Id.* At *2 (citations omitted).

78.    Ms. White's actions have placed the Debtor in a precarious and unfortunate

position.

79.    This Court may sanction and impose a civil penalty against Ms. White and order

disgorgement of fees pursuant to Bankruptcy Code §§ 105, 329 and Bankruptcy Rule 2017.

80.    Pursuant to Bankruptcy Code § 105, this Court may also suspend Ms. White's

right to engage in the practice of law before the United States Bankruptcy Court for the Eastern

District of Virginia.

81.     The issue of the Bankruptcy Court's authority to impose sanctions, order

suspension, and to oversee debtor's transactions with their attorneys has been addressed by the

United States District Court for the Eastern District of Virginia in the case of *In re Parker*, 2014

U.S. Dist. LEXIS 136355 (E.D. Va. Sept 26, 2014).

82.     As stated by Judge Payne, "[a] federal court has an inherent power 'to control

admission to its bar and to discipline attorneys who appear before it'. . . [and the] power to

sanction has been recognized in the Fourth Circuit as with the Bankruptcy Court in addition to

Article III courts." *Id*. at *14, *citing McGahren v. First Citizens Bank & Trust Co. (In re Weiss),*

111 F.3d 1159, 1169 (4th Cir. 1997) and *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991).

83.     Judge Payne stated that "Bankruptcy Courts have the power to oversee debtor's

transactions with their attorneys under 11 U.S.C. 329." *In re Parker*, 2014 U.S. Dist. LEXIS

135355, at *19 (E.D. VA., Sept, 26, 2014).

84.     Judge Payne further stated that "[t]he Bankruptcy Court's sanction power,

allowing it to discipline those attorneys who appear before it, extends to requiring deficiently-

performing attorneys to reimburse those who were negatively affected by their wrongdoing." *Id*.

at *21-22, *citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)

(stating that the inherent sanction power permitted a court to assess attorneys' fees) (superseded

by statute on other grounds); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178 (9th Cir. 2003)

(upholding **[*22]** a bankruptcy court's award of the Trustee's legal fees); *Oliveri v. Thompson*,

803 F.2d 1265 (2nd Cir. 1986) (court's exercise of its inherent sanction power creates an

exception to the rule that parties bear their own fees and expenses of litigation); *In re Couch-

Russell*, 2003 Bankr. LEXIS 2260, at 12 (Bankr. D. Idaho 2003) (The inherent sanction power

"includes the ability to assess sanctions in the form of attorneys' fees and costs..."); *In re 72nd St.*

*Realty Association*, 185 B.R. 460, 475 (Bankr. S.D.N.Y. 1995) ("A court is empowered to assess costs and fees against an attorney and/or his client where a party acts in bad faith, vexatiously, wantonly, or for oppressive reasons").

85.     The Preamble to the Virginia Rules of Professional Conduct offers guidance regarding expectations of attorneys and provides, in pertinent part, as follows:

> In all professional functions a lawyer should be competent, prompt and diligent. . .
>
> The legal profession is largely self-governing. Although other professions also have been granted powers of self-government, the legal profession is unique in this respect because of the close relationship between the profession and the processes of government and law enforcement. . . .
>
> To the extent that lawyers meet the obligations of their professional calling, the occasion for government regulation is obviated. . . .
>
> The legal profession's relative autonomy carries with it special responsibilities of self-government…. Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.
>
> Lawyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship to our legal system. The Rules of Professional Conduct, when properly applied, serve to define that relationship.
>
> Virginia Rules of Prof'l Conduct, Preamble.

86.     Bankruptcy Code § 105(a) not only enables the Bankruptcy Court to issue any order needed to enforce violations of other sections of the Bankruptcy Code, but also serves as a separate source for sanctions in its own right. *Weiss v. First Citizens Bank & Trust Co.*, 111 F.3d 1159, 1171-1172 (4th Cir. 1997), cert. denied, 522 U.S. 950 (1997). Bankruptcy courts have the

power to sanction parties or counsel for bad faith conduct in bankruptcy proceedings. *See, e.g.,*

*Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 864 (8th Cir. 2000) (section 105(a) power

"includes the power to sanction counsel"); *See generally In re Final Analysis, Inc.,* 389 B.R. 449

(Bankr D. Md. 2008) (bankruptcy court may use section 105(a) to choose the remedy it finds

necessary to curb the abusive unauthorized practice of law); *In re Babcock*, 258 B.R. 646, 651

(Bankr. E.D. Va. 2001) (among other things, court imposed $2,653.00 in monetary sanctions

against counsel for his negligent administration of debtors' chapter 7 case) (counsel's advice--to

disregard the instruction of the trustee--was "truly incredible").

87.     Bankruptcy Code § 329 authorizes the Court to examine the Debtor's transactions

with Ms. White.  Bankruptcy Code § 329 provides, as follows:

> (a) Any attorney representing a debtor in a case under this title, or in connection
> with such a case, whether or not such attorney applies for compensation under
> this title, shall file with the court a statement of the compensation paid or agreed
> to be paid, if such payment or agreement was made after one year before the date
> of the filing of the petition, for services rendered or to be rendered in
> contemplation of or in connection with the case by such attorney, and the source
> of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the
> court may cancel any such agreement, or order the return of any such payment, to
> the extent excessive, to – (1) the estate if the property transferred –
>> (A) would have been property of the estate; or
>> (B) was to be paid by or on behalf of the debtor under a plan under chapter
>> 11, 12, or 13 of this title; or
> (2) the entity that made such payment.

11 U.S.C. § 329 (2015).

88.     Bankruptcy Rule 2017 provides authority for this Court to determine whether

payment of money or transfer of property of the debtor, either before or after an order for relief,

is excessive.

89.     To the extent the payment or transfer occurs after an order for relief, Bankruptcy

Rule 2017 provides authority for this Court to determine whether the payment or transfer is

excessive "whether the payment or transfer is made directly or indirectly, if the payment,

transfer, or agreement therefor is for services <u>in any way</u> related to the case."  Fed. R. Bankr. P.

2017 (emphasis added).

90.    This Court may examine all payments made to Ms. White or her Law Firm, not

just the payments made in connection with the Bankruptcy Cases.

91.    Pursuant to Collier on Bankruptcy,

Rule 2017 does not limit the purposes for the transfers or agreements which may
be examined. There is no requirement that the fee arrangement pertain to services
to be performed in connection with the bankruptcy case. Any fees or agreement
for fees which otherwise fits the requirements for examination under Rule 2017
will be subject to review under the rule, even if the services rendered were in
connection with matters unconnected with the bankruptcy.  While Rule 2017(a)
governs any transaction with any attorney in contemplation of bankruptcy,
regardless of the nature or purpose of the representation, Rule 2017(b) requires
that the services rendered or to be rendered have some (however minimal)
connection with the bankruptcy case. The court may examine a promise to pay a
prior account due to counsel under Rule 2017.

9 Collier On Bankruptcy ¶ 2017.08 (Alan N. Resnick, Henry J. Sommer eds., 16th ed.
2009).

92.    Based on the allegations described in the foregoing paragraphs, all fees paid to

Ms. White for her legal services in the 2012 Case and 2014 Case appear excessive and should be

disgorged to the appropriate trustee.

93.    Additionally, the $33,490.00 payment made to Ms. White during the pendency of

the 2012 Case and within ninety (90) days of filing of the 2014 Case should also be disgorged to

the appropriate trustee.

94.    Given the egregious and self-serving nature of the alleged actions of Ms. White,

the U.S. Trustee asserts that sanctions and suspension for a reasonable time from the practice of

law before the United States Bankruptcy Court for the Eastern District of Virginia are warranted.

95.    Judge Huennekens has aptly stated "[a]s officers of the court, attorneys have a special responsibility for upholding the quality of justice within the judicial process . . . The Court depends on the veracity, integrity and competence of the attorneys that practice before it." *In re Alvarado*, 363 B.R. at 489-90 (Bankr. E.D. Va. 2007).

96.    Ms. White's actions in these Bankruptcy Cases have not only violated numerous Rules of Professional Conduct, but have caused harm to her client, the creditors and the integrity of the bankruptcy system.

WHEREFORE, the United States Trustee, by counsel, respectfully moves the Court to review the fees received by Nnika E. White or The Law Office of White & Associates, PLLC and to order complete disgorgement, assess appropriate sanctions and penalties, suspend her right to practice before the United States Bankruptcy Court for the Eastern District of Virginia for a reasonable time, and for such other and further relief as may be just.

Respectfully submitted,

Date:  August 14, 2015

JUDY A. ROBBINS
United States Trustee
Region Four

/s/ Robert B. Van Arsdale
Robert B. Van Arsdale, AUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on August 14, 2015, I caused to be mailed a true and correct copy of the above and foregoing, with postage fully prepaid herein, via U.S. Mail, to the following parties:

Tamara Sue Crews
11955 Mountain Laurel Drive
Richmond, VA 23236

In addition, the foregoing was delivered via electronic mail pursuant to II.B.4 of the Administrative Procedures of the CM/ECF System for the United Stated Bankruptcy Court for the Eastern District of Virginia to all other necessary parties.

/s/Robert B. Van Arsdale
    Robert B. Van Arsdale, AUST

VIRGINIA:

BEFORE THE THIRD DISTRICT—SECTION I SUBCOMMITTEE
OF THE VIRGINIA STATE BAR

IN THE MATTER OF
NNIKA EVANGELINE WHITE                    VSB Docket No. 15-031-102065

SUBCOMMITTEE DETERMINATION
(CERTIFICATION)

On June 3, 2015, a meeting in this matter was held before a duly convened Third

District—Section I Subcommittee consisting of Reiss F. Wilks, Esquire, chair presiding, Victoria

N. Pearson, Esquire, and Reverand Daniel Greenwood, lay member.  Pursuant to Part 6, § IV,

¶13-15.B.3 of the Rules of the Supreme Court of Virginia, the Third District—Section I

Subcommittee of the Virginia State Bar hereby serves upon Nnika Evangeline White,

("Respondent") the following Certification:

I.      FINDINGS OF FACT

1.  Respondent was licensed to practice law in the Commonwealth of Virginia in or about
    October 2001.  At all times relevant to this matter, her license has been in good standing.

2.  Respondent is the owner of and practices law at White & Associates, P.C.  Respondent
    started this practice in or about 2004.

3.  Respondent's areas of practice include, but are not limited to bankruptcy, domestic relations,
    criminal law, and small business law.

*Misconduct Related to Respondent's Handling of Client Funds
and Management of the Trust Account*

4.  Since 2004, Respondent has maintained her trust account and operating account at Wells
    Fargo Bank, which was formerly Wachovia Bank.

5.  In or about 2004, Respondent set up her trust account to provide overdraft protection for her
    operating account. Respondent asserts that she was unaware that she could not use her trust
    account for overdraft protection for her operating account until the bar's 2015 inquiry to her
    and that she ceased this practice thereafter.

1

6. Since 2004, Respondent has deposited earned fees into her trust account and commingled her funds with client funds. Respondent asserts that until the bar's inquiry, she was unaware that it is improper to commingle funds belonging to the attorney with funds belonging to client. Respondent further asserts that she has since ceased this practice.

7. Since 2004, Respondent has failed to maintain client subsidiary ledgers.

8. In 2013, Respondent's trust account provided overdraft protection for deficits in her operating account 64 times, for a total of over $61,500.00.

9. In 2014, Respondent's trust account provided overdraft protection for deficits in her operating account 74 times, for a total of over $85,000.00.

10. From January 2015 to February 2015, Respondent's trust account provided overdraft protection for deficits in her operating account four times for a total of over $2,200.00.

11. Because Respondent has commingled her funds with client funds, and because she has failed to maintain client subsidiary ledgers, Respondent cannot confirm that client funds were not withdrawn from her trust account to provide overdraft protection for deficits in her operating account.

12. In 2013 and 2014, Respondent has, at various times, kept client funds in her operating account and has written checks from her operating account to make payments using client funds, including, but not limited to refunding unearned fees to clients, making payments to the bankruptcy trustee on behalf of clients, and paying support arrearages on behalf of clients.

13. By commingling her funds with those of her clients, Respondent has violated Rule 1.15 (a) (3) of the Rules of Professional Conduct. [1]

14. By using her trust account for overdraft protection on her operating account since 2004 and by using the overdraft protection 142 times in 2013, 2014, and 2015, Respondent has violated Rule 1.15 (b) (5) and 8.4 (b) and (c) of the Rules of Professional Conduct.[2]

15. By failing to maintain client subsidiary ledgers, Respondent has violated Rule 1.15 (c) (2) of the Rules of Professional Conduct.[3]

16. By keeping client funds in her operating account instead of her trust account, Respondent has violated Rules 1.15 (a) (1) of the Rules of Professional Conduct.[4]

---

[1] Rule 1.15 was rewritten effective June 21, 2011. For commingling occurring prior to June 21, 2011, Respondent's conduct violated Rule 1.15 (a).
[2] For overdraft protection withdrawals occurring before June 21, 2011, Respondent's conduct violated Rule 1.15 (a) and Rule 8.4 (b) and (c).
[3] For failures to maintain subsidiary ledgers prior to June 21, 2011, Respondent's conduct violated Rule 1.15(e)(1)(iii).
[4] For failures to keep client funds in the trust account prior to June 21, 2011, Respondent violated Rule 1.15 (a).

2

17. By failing to handle client funds and maintain trust account records competently, Respondent has violated Rule 1.1 of the Rules of Professional Conduct.

*Misconduct Related to Tamara Crews Bankruptcies*

18. Since 2004, Respondent has represented a substantial number of debtors in bankruptcy proceedings.

19. Respondent represented Tamara Sue Crews in a Chapter 13 bankruptcy filed in the United States Bankruptcy Court for the Eastern District of Virginia on February 29, 2012 and dismissed on September 18, 2014 (case no. 00-12-31264).

20. During the time that Respondent represented Ms. Crews in this bankruptcy, Respondent was a general creditor of Ms. Crews, who incurred several thousand dollars in fees for various services Respondent performed since 2005.

21. Respondent was listed as a creditor in the bankruptcy only to the extent of the attorney's fees and costs associated with this bankruptcy. Respondent was paid attorney's fees of $3,359.00 through the plan.

22. According to Respondent's own time records, on July 15, 2014, she and Ms. Crews had a discussion about "payments" Ms. Crews would receive from a "stock disbursement."

23. On August 6, 2014, the trustee filed an action to remedy default by Ms. Crews in performance under the plan.

24. On or about September 10, 2014, Ms. Crews received two checks payable to her totaling $50,074.58 from TIAA-CREF. Ms. Crews advised the bar's investigator that these checks represented an inheritance from a cousin.

25. Ms. Crews took the checks to Respondent, and on September 16, 2014, Respondent deposited the money into her trust account. Even though Ms. Crews was out of compliance with the payment plan, at no time did Respondent disclose to the bankruptcy trustee or the bankruptcy court the receipt of these funds. On September 18, 2014, Judge Phillips dismissed Ms. Crews' bankruptcy case for failure to make payments as required by the plan.

26. Respondent has provided the bar with a "disbursement sheet" indicating that Respondent immediately disbursed to herself $33,490.00 of the $50,074.58 as payment for outstanding fees for work Respondent had performed for Ms. Crews dating back to 2005. Respondent then deducted $679.00 for a bankruptcy filing fee and $1,875.00 for "future bankruptcy payments." According to the disbursement sheet, the remaining funds of $14,030.58 remained in the possession of Respondent.

27. On September 29, 2014, Respondent filed a new Chapter 13 petition on behalf of Ms. Crews in the U.S. Bankruptcy Court for the Eastern District of Virginia (case number 14-35243), which remains pending. In none of the filings made for either of Ms. Crews' bankruptcies

has Respondent disclosed the following: 1) that Ms. Crews received an inheritance of
$50,074.58 on or about September 10, 2014; 2) that Respondent herself was a general
creditor of Ms. Crews; 3) that shortly before filing the second petition on September 29,
2014, Respondent had accepted thousands of dollars from Ms. Crews to satisfy outstanding
fees; 4) that Respondent continues to hold money for Ms. Crews; or 5) that Respondent has
made several payments to Ms. Crews since filing the second bankruptcy.

28. Respondent has made payments to or on behalf of Ms. Crews from Respondent's operating
account as follows:

| Amount | Date | Payment to and Memo line |
|--------|------|--------------------------|
| $500.00 | 9/26/14 | Payable to Tamara Crews, "trust" |
| $600.00 | 9/26/14 | Payable to Patsy Wells, "pd. in full for Tamara Crews" |
| $1,100.00 | 10/21/14 | Payable to Tamara Crews, "estate" |
| $350.00 | 11/3/14 | Payable to Tamara Crews, no memo |
| $1,421.00 | 11/7/14 | Payable to Tamara Crews, "estate for [illegible]" |
| $440.00 | 11/18/14 | Payable to Tamara Crews, no memo |
| $250.00 | 11/24/14 | Payable to Tamara Crews, "estate" |
| $2,500.00 | 12/18/14 | Payable to Tamara Crews, "estate" |
| $525.00 | 12/18/14 | Payable to Tamara Crews, "estate" |
| $2,044.00 | 1/8/15 | Payable to Tamara Crews, "estate" |
| $400.00 | 1/15/15 | Payable to Mary E. Johnson, "Crews estate" |

29. By representing Ms. Crews in two bankruptcies when Respondent was a general creditor of
Ms. Crews, Respondent violated Rules 1.7 (a) (2) and 8.4 (b) and (c) of the Rules of
Professional Conduct.

30. By failing to disclose the following information to the bankruptcy trustee and/or the
bankruptcy court  in one or both of bankruptcy cases: 1) that Ms. Crews received an
inheritance of $50,074.58 on or about September 10, 2014; 2) that Respondent herself was a

4

general creditor of Ms. Crews; 3) that shortly before filing the second bankruptcy petition on September 29, 2014, Respondent accepted thousands of dollars from Ms. Crews to satisfy outstanding fees; 4) that Respondent continued to hold money for Ms. Crews; or 5) that Respondent has made several payments to Ms. Crews since filing the second bankruptcy, Respondent violated Rule 3.3 (a) (1) and (2), Rule 4.1 (a) and (b), and Rule 8.4 (b) and (c) of the Rules of Professional Conduct.

## II. NATURE OF MISCONDUCT

Such conduct by Respondent constitutes misconduct in violation of the following

provisions of the Rules of Professional Conduct:

**RULE 1.1     Competence**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**RULE 1.7     Conflict of Interest: General Rule.**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

(2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

5

## RULE 1.15    Safekeeping Property[5]

(a) Depositing Funds.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts or placed in a safe deposit box or other place of safekeeping as soon as practicable.

(3) No funds belonging to the lawyer or law firm shall be deposited or maintained therein except as follows:

(i) funds reasonably sufficient to pay service or other charges or fees imposed by the financial institution or to maintain a required minimum balance to avoid the imposition of service fees, provided the funds deposited are no more than necessary to do so; or

(ii) funds in which two or more persons (one of whom may be the lawyer) claim an interest shall be held in the trust account until the dispute is

---

[5] Rule 1.15 was rewritten effective June 21, 2011. Respondent's conduct prior to this date violated Rule 1.15 (a) and Rule 1.15 (e)(1) (iii) as then written, which provided:

(a)    All funds received or held by a lawyer or law firm on behalf of a client, other than reimbursement of advances for costs and expenses, shall be deposited in one or more identifiable escrow accounts maintained at a financial institution in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
   (1)  Funds reasonable sufficient to pay service or other charges or fees imposed by the financial institution may be deposited therein; or
   (2)  Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, and the portion belonging to the lawyer or law firm must be withdrawn promptly after it is due unless the right of the lawyer or the law firm to receive is disputed by the client, in which even the disputed portion shall not be withdrawn until the dispute is finally resolved.

(e)(1)(iii) Record-Keeping Requirements, Required Books and records.  As a minimum requirement every lawyer engaged in the private practice of law in Virginia, hereinafter called "lawyer," shall maintain or cause to be maintained, on a current basis, books and records which establish compliance with Rule 1.15 (a) and(c).  Whether a lawyer or law firm maintains computerized records or a manual accounting system, such system must produce the records and information required by this Rule.

(1) In the case of funds held in an escrow account subject to this Rule, the required books and records include:
      (iii) subsidiary ledger.  A subsidiary ledger containing a separate account for each client and for every other person or entity from whom money has been received in escrow shall be maintained. The ledger account shall by separate columns or otherwise clearly identify escrow funds disbursed, and escrow balance on hand. The ledger account for a client or a separate subsidiary ledger account for a client shall clearly indicate all fees paid from trust accounts;

6

resolved and there is an accounting and severance of their interests.  Any portion finally determined to belong to the lawyer or law firm shall be withdrawn promptly from the trust account.

(b) <u>Specific Duties.</u>  A lawyer shall:

(5) not disburse funds or use property of a client or third party without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

(c) <u>Record-Keeping Requirements.</u>  A lawyer shall, at a minimum, maintain the following books and records demonstrating compliance with this Rule:

(2) A subsidiary ledger containing a separate entry for each client, other person, or entity from whom money has been received in trust.

The ledger should clearly identify:

(i) the client or matter, including the date of the transaction and the payor or payee and the means or methods by which trust funds were received, disbursed or transferred; and

(ii) any unexpended balance.

## RULE 3.3    Candor Toward The Tribunal

(a)    A lawyer shall not knowingly:

(1)  make a false statement of fact or law to a tribunal;

(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, subject to Rule 1.6;

## RULE 4.1    Truthfulness In Statements To Others

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of fact or law; or

(b) fail to disclose a fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.

**RULE 8.4**   **Misconduct**

It is professional misconduct for a lawyer to:

(b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law;

## III. CERTIFICATION

Accordingly, it is the decision of the Subcommittee to certify the above matters to the

Virginia State Bar Disciplinary Board.

THIRD DISTRICT—SECTION I
SUBCOMMITTEE OF
THE VIRGINIA STATE BAR

By _____
Reiss F. Wilks
Subcommittee Chair

## CERTIFICATE OF SERVICE

I certify that on June 17, 2015, I mailed by certified mail a true and correct copy of the foregoing Subcommittee Determination (Certification) to Nnika Evangeline White, Esquire, Respondent, at Suite 800, 9101 Midlothian Turnpike, Richmond, VA 23235, Respondent's last address of record with the Virginia State Bar, and by first class mail, postage prepaid, to Charlotte Peoples Hodges, counsel for Respondent, at B.I.G. Legal Services, PLLC, P.O. Box 4302, Midlothian, VA 23112.

_____
Kathryn R. Montgomery
Deputy Bar Counsel

8

## AGREEMENT

THIS AGREEMENT is made this 21st day of February, 2012, by and between Tamara Crews ("Crews") and Law Office of White & Associates, PLLC (White & Associates"), by Nnika E. White, Esq. ("White").

Crews and White acknowledge and agree that both have the authority to enter into this Agreement and neither is under any duress and have been informed of her own rights before executing this Agreement.

Crews acknowledges to White on behalf of White & Associates, that she owes a significant balance of approximately $37,000.00 to the law firm. Crews understands that that White & Associates is forgiving any and all debt owed to the firm above the amount of $37,000.00 as long as she completes her chapter 13 bankruptcy plan that is to be filed within the next 30 days. If she does not complete her chapter 13 plan than the two parties will at that time make a decision as to whether or not she has a balance with the firm.

Crews acknowledges that White & Associates will represent her in a Chapter 13 Bankruptcy and that she will no longer owe the law firm any legal fees or costs associated with previous representation by the law firm.

Crews will need to execute a new legal contract on any and all matters that arise after the filing of her Chapter 13 Bankruptcy that are unrelated to her bankruptcy representation. White acknowledges that all bankruptcy related fees will be paid through Crews Chapter 13 bankruptcy plan.

The waiver or failure to enforce any provision of this Agreement shall not operate as a waiver of any future breach of any such provision or any other provision hereof.

If any clause or provision hereof shall be deemed unlawful in whole or in part, then such clause or provision shall have no force or effect, as though not herein contained, and the remainder of this Agreement shall remain operative and in full force and effect. This Agreement contains the parties entire understanding, there being no representations, promises, warranties, covenants, or undertakings ("side agreements") other than those expressly set forth herein.

This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, County of Chesterfield.

WITNESS the following signatures and seals:

_____ (SEAL)
TAMARA CREWS

LAW OFFICE OF WHITE & ASSOCIATES

_____ (SEAL)
NNIKA E. WHITE, ESQ.

# Law Office of White & Associates

8515 Mayland Drive
Richmond, Virginia 23294

| DATE | DESCRIPTION OF SERVICES - Timesheet | TIME | FEE/ COST |
|------|-------------------------------------|------|-----------|
| 5/14/2005 | Initial meeting with client. Discussed her health concerns and her father passing. His estate. Her estate rights and her childrens rights. | 1.4 | $455.00 |
| 5/17/2005 | Reviewed fathers estate papers | 0.3 | $97.50 |
| 5/17/2005 | Reviewed her current bills and fathers outstanding bills | 0.2 | $65.00 |
| 5/18/2005 | Client brought in more bills, and her hospital papers | 1.1 | $357.50 |
| 5/25/2005 | Client requested information regaridng social security and her rights | 0.2 | $65.00 |
| 5/28/2005 | Researched social security benefits and printed off material | 1.3 | $422.50 |
| 6/3/2005 | Research case law regarding disability and social security and working | 1.4 | $455.00 |
| 6/4/2005 | Went over social security information with client | 0.3 | $97.50 |
| 6/8/2005 | Went over new business inerests with client over the phone | 0.8 | $260.00 |
| 6/11/2005 | Research information regarding dog breeding and leasing laws | 1.8 | $585.00 |
| 6/12/2005 | Review paperwork regarding mortgage | 0.2 | $65.00 |
| 6/15/2005 | Went Over paperwork for Father's estate and new bills | 0.7 | $227.50 |
| 6/16/2005 | Spoke with client regarding father's estate and bills | 0.6 | $195.00 |
| 6/17/2005 | Research case law and code regarding hospital violations of tratment and cancer | 1.7 | $552.50 |
| 6/19/2005 | Research case law and code regarding hospital violations of tratment and cancer | 2.1 | $682.50 |
| 6/20/2005 | Reviewed mortgage documents | 0.3 | $97.50 |
| 6/21/2005 | Went over mortgage documents with client on phone | 0.4 | $130.00 |
| 6/24/2005 | Went over payment history with client | 0.5 | $162.50 |
| 6/30/2005 | Reviewed clients bank statements for payments | 0.9 | $292.50 |
| 7/7/2005 | Researched medical malpractice laws in va and her medical bills | 1.4 | $455.00 |
| 7/8/2005 | Researched medical malpractice laws in va and her medical bills | 2.8 | $910.00 |
| 7/9/2005 | Went over medical malpractice laws with client | 1.4 | $455.00 |
| 7/12/2005 | Went over her bills and mortgage letters | 0.6 | $195.00 |
| 7/15/2005 | Researched estate laws in florida and tennessee | 2.6 | $845.00 |
| 7/19/2005 | Went over research with client | 0.7 | $227.50 |
| 7/31/2005 | Wennt over more bank statements of clients | 0.4 | $130.00 |
| 8/18/2005 | Phone conversation with client. Client having difficulty paying bills and father's creditors calling | 0.3 | $97.50 |
| 8/23/2005 | Went over options regarding bills and estate issues | 0.6 | $195.00 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 8/26/2005 | Went over refinancing options with client | 0.9 | $292.50 |
| 8/31/2005 | Went over paperwork regarding spouses benefits for social security and retirement | 1.1 | $357.50 |
| 9/6/2005 | Husand is calling and she is concerned about his rights to her portion of her estate.  Looking into options for children and retirement concerns. | 0.2 | $65.00 |
| 10/7/2005 | Her cancer is not doing well.  Discussed estate concerns again and her bills.  Drafted and created a medical directive and power of attorney | 0.4 | $130.00 |
| 10/12/2005 | drafted and created a will | 1 | $325.00 |
| 10/16/2005 | Review will with client. Client to bring in more info to make changes | 1.2 | $390.00 |
| 11/8/2005 | Researched laws in florida for estates and went over results with client | 1.9 | $617.50 |
| 11/9/2005 | Research land laws regarding property lines | 0.6 | $195.00 |
| 11/11/2005 | Went over initial results with client | 0.4 | $130.00 |
| 11/13/2005 | Research land laws regarding property lines | 0.2 | $65.00 |
| 11/14/2005 | Met with client  - discussed her issues with her neighbor and invasion of privacy concerns. | 1.1 | $357.50 |
| 11/18/2005 | Research land laws regarding property lines | 0.6 | $195.00 |
| 12/5/2005 | Research case law regarding property lines | 0.8 | $260.00 |
| 12/6/2005 | Research case law regarding trespass | 0.4 | $130.00 |
| 12/19/2005 | Phone conversation with client.  Hospital Rights. Health Care concerns. Violation of privacy issues with hospital | 0.3 | $97.50 |
| 2/7/2006 | Client wanted to talk about malpractice from hospital | 0.8 | $260.00 |
| 2/16/2006 | Reviewed Clients bills and set up a budget for her | 0.6 | $195.00 |
| 2/21/2006 | Client's son was having issues at work and client wanted me to tell her if I thought her son would have a suit against his employer for harassment.  Also discussed her bills | 0.9 | $292.50 |
| 2/28/2006 | Researched case law, Housing laws regarding mortgage | 3.4 | $1,105.00 |
| 3/14/2006 | Client had concerns regardng her husband and wether he could mess up the amount she might get from social security or disability | 0.7 | $227.50 |
| 3/21/2006 | Reviewed paperwork regaring her mortgage | 0.2 | $65.00 |
| 3/21/2006 | Went over her budget. Client wants to refinance | 0.2 | $65.00 |
| 5/16/2006 | Made out a new budget for client and gave information to clean up her credit report | 0.7 | $227.50 |
| 5/19/2006 | Reviewed refinance options with client | 0.4 | $130.00 |
| 5/20/2006 | Looked at mortgage paperwork | 0.1 | $32.50 |
| 5/21/2006 | Reviewed paperwork faxed in by client | 0.1 | $32.50 |
| 5/23/2006 | Client called to discuss paperwork faxed in. | 0.4 | $130.00 |
| 5/26/2006 | Client called to talk about hospital concerns and rights to her privacy | 0.3 | $97.50 |
| 6/6/2006 | Reviwed her bills and settlement options | 0.2 | $65.00 |
| 8/8/2006 | Phone conversation with client.  Client has new information. Discussed father's estate and possible return of assets. | 1.3 | $422.50 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 8/16/2006 | Met with client and went over her outstanding bills and methods of payment. Concerns of bankruptcy | 0.8 | $260.00 |
| 8/17/2006 | Looked at bankruptcy options and concerns with equity in house | 0.4 | $130.00 |
| 8/20/2006 | Looked at settlement options from persoanl loan companies | 0.6 | $195.00 |
| 9/8/2006 | Went over new paperwork with client regarding social security, went back over issues of fathers estate, health care concerns | 1.6 | $520.00 |
| 9/13/2006 | Spoke with client regarding her power of attorney and mortgage | 0.3 | $97.50 |
| 9/15/2006 | Spoke with client regarding mortgage | 0.1 | $32.50 |
| 9/25/2006 | Review mortgage paperwork with client | 0.8 | $260.00 |
| 9/28/2006 | Spoke with client regarding power of attorney and living will for health reasons | 0.5 | $162.50 |
| 10/10/2006 | Helped Client with Bills | 0.4 | $130.00 |
| 12/18/2006 | Reviewed paperwork with her mortgage | 0.2 | $65.00 |
| 1/11/2007 | Reviewed options for help with mortgage and her bills.  Client is struggling and her health is not doing well | 1.3 | $422.50 |
| 1/17/2007 | Went over social security options and her disablity changes. Went over gap insurance for house in case of death | 0.8 | $260.00 |
| 1/23/2007 | Spoke with client regarding her cousins passing | 0.2 | $65.00 |
| 1/24/2007 | Reviewed paperwork from her mortgage | 0.6 | $195.00 |
| 1/30/2007 | Reviewed paperwork regarding a loan recevied in mail with client. Not advisable | 0.9 | $292.50 |
| 2/21/2007 | Met with client to discuss bankruptcy options and spoke about estate law | 1.4 | $455.00 |
| 3/19/2007 | Reviewed cousins estate paperwork with client, researched laws out of state and gave client infromation regarding intestate laws here in Virginia | 2.8 | $910.00 |
| 3/26/2007 | Cleint having problem paying bills and went over options of personal loans and credit implications | 0.4 | $130.00 |
| 5/7/2007 | Research laws concerning renting rooms in homes and zoning issues | 0.3 | $97.50 |
| 5/8/2007 | Research laws concerning renting rooms in homes and zoning issues | 1.4 | $455.00 |
| 5/11/2007 | Went over research with client | 0.7 | $227.50 |
| 5/12/2007 | Research laws concerning rezoning and dual family homes, requirements for disability | 1.5 | $487.50 |
| 5/14/2007 | Research laws concerning renting rooms in homes and zoning issues | 1.8 | $585.00 |
| 5/16/2007 | Went over paperwork client received for mortgage and her bills, discussed bankruptcy again | 1.1 | $357.50 |
| 5/27/2007 | Met with client and went over her mortgage paperwork and options for refinance | 0.8 | $260.00 |
| 7/27/2007 | Reviewed paperwork regarding cousins estate, loan refinancing options, ran numbers to be approved for loan refianncing | 2.6 | $845.00 |
| 10/12/2007 | Met with client and reviewed new paperwork regarding cousins estate, went over her bills, redid her budget, went over mortgage paperwork | 2.3 | $747.50 |

| Date | Description | | |
|---|---|---|---|
| 10/16/2007 | Reviewed loan applications for personal loans, advised against them | 0.7 | $227.50 |
| 12/3/2007 | Met with client to review new social security information and new health plan option | 1.1 | $357.50 |
| 1/7/2008 | Reviewed social security paperwork and information she would need to file it. | 0.9 | $292.50 |
| 5/1/2008 | Reviewed Disability information regarding her social security and Unum | 1.9 | $615.50 |
| 5/8/2008 | Reviewed correspondence from Unum | 0.3 | $97.50 |
| 5/9/2008 | Went over correspondence from Unum | 0,4 | $130.00 |
| 5/14/2008 | Reviewed Unum policies for disablity | 1.7 | $552.50 |
| 5/16/2008 | Reviewed Unum policies for disabiity | 1 | $325.00 |
| 6/11/2008 | Reviwed with client Letter from Lead Disablity Specialist | 0.4 | $130.00 |
| 6/17/2008 | Reviewed paperwork from Unum and discussed with client | 1.3 | $422.50 |
| 7/2/2008 | reviewed information with client regarding social security | 1.3 | $422.50 |
| 7/6/2008 | reveiwed packet of final information for social security | 0.7 | $227.50 |
| 10/10/2008 | Reviewed Unum information regarding reduction of payment | 0.3 | $97.50 |
| 10/15/2008 | Reviewed paperwork from Unum and discussed with client | 0.7 | $227.50 |
| 12/22/2008 | Went over correspondence from Unum | 0.4 | $130.00 |
| 5/10/2009 | Advsed client about alternative options for debt settlement | 0.4 | $130.00 |
| 5/11/2009 | Reveiwed momey management Profile | 0.3 | $97.50 |
| 5/11/2009 | Reviewed Adult Disability Interview information with client | 1.4 | $455.00 |
| 5/12/2009 | Helped form packet for reviwed for Genex Services | 1.2 | $390.00 |
| 5/19/2009 | Reviewed possible claims against HSBC | 0.2 | $65.00 |
| 7/5/2009 | Helped Client find necessary paperwork for social security | 0.9 | $292.50 |
| 7/5/2009 | Reviwed contractor list and Belfor work authroization | 0.3 | $97.50 |
| 7/6/2009 | Went over list of all things client wanted to have done with the house | 0.4 | $130.00 |
| 7/17/2009 | Client has concerns regarding HSBC and possible court | 0.3 | $97.50 |
| 7/23/2009 | Client considering bankruptcy again | 0.6 | $195.00 |
| 8/13/2009 | Cleint receiving calls regarding payment with Glasser and Glasser reagrding HSBC | 0.3 | $97.50 |
| 8/16/2009 | Reviewed letter from Glasser and Glasser | 0.2 | $65.00 |
| 9/11/2009 | Researched Information regaridng a loan modification and whether applicable to client | 1.6 | $520.00 |
| 9/15/2009 | Went over clients budget and loan modification options | 0.7 | $227.50 |
| 9/21/2009 | Reviewed clients information for application for loan modification | 1.1 | $357.50 |
| 9/24/2009 | Reviewed correspondence from Mortgage | 0.2 | $65.00 |
| 10/9/2009 | Recalculated clients budget | 0.3 | $97.50 |
| 11/19/2009 | Helped resend new information for mortgage | 1.4 | $455.00 |
| 11/21/2009 | Made copies and arranged package for mortgage | 1.6 | $520.00 |
| 1/22/2010 | Reviewed paperwork from mortgage | 0.3 | $97.50 |
| 4/5/2010 | Reviewed paperwork regarding loan modification with client and options | 1.6 | $520.00 |
| 5/17/2010 | Reviewed paperwork from Unum and discussed with client | 0.7 | $227.50 |
| 5/21/2010 | Went over budget with client and options for settlement | 0.3 | $97.50 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 7/24/2010 | Reviewed release of information from hospital | 0.4 | $130.00 |
| 7/23/2010 | Looked over paperwork from mortgage | | |
| 10/15/2010 | Reviewed paperwork regaridng Social Security Change | 0.2 | $65.00 |
| 11/19/2010 | Researched hospital privacy laws and release of information, FOIA | 1.7 | $552.50 |
| 1/20/2011 | Reviewed paperwork from Unum | 0.4 | $130.00 |
| 1/28/2011 | Reviewed paperwork from mortgage | 0.2 | $65.00 |
| 5/27/2011 | Spoke with client regarding EHLP | 0.3 | $97.50 |
| 6/21/2011 | Reviewed paperwork regarding EHLP through HUD, researched policies and procedures for EHLP and whether it would benefit client | 2.1 | $682.50 |
| 6/27/2011 | Reviewed paperwork regarding mortgage | 0.3 | $97.50 |
| 7/25/2011 | Reviewed paperwork from Unum | 0.3 | $97.50 |
| 8/4/2011 | Reviewed mortgage paperwork with client | 0.3 | $97.50 |
| 9/18/2011 | Went over bills with client | 0.4 | $130.00 |
| 9/22/2011 | Spoke with client regarding options to sell home | 0.2 | $65.00 |
| 10/3/2011 | Spoke with client regarding her health issues and possible refinance and issues with neighbor | 0.4 | $130.00 |
| 10/25/2011 | Reviewed paperwork from Social Security | 0.3 | $97.50 |
| 12/5/2011 | Cleint spoke to me regarding a phone call with Unum | 0.4 | $130.00 |
| 12/16/2011 | Met with client to discuss her health care concerns and bankruptcy options again or settlement. | 1.4 | $455.00 |
| 1/11/2012 | Reviewed documents regarding mortgage | 0.2 | $65.00 |
| 1/16/2012 | Bankruptcy file opened | 1.7 | $0.00 |
| 2/10/2012 | Went over her estate options and what she wanted to change | 0.6 | $195.00 |
| 2/14/2012 | Discussed her budget and if she could get a new car | 0.4 | $130.00 |
| 5/18/2012 | Spoke with client regarding doing a refinancing | 0.2 | $65.00 |
| 5/22/2012 | Reviewed documents regarding Unum | 0.3 | $97.50 |
| 5/26/2012 | Researched disability and social security laws regarding set off for Unum | 1.4 | $455.00 |
| 5/27/2012 | Researched case law | 1.8 | $585.00 |
| 6/5/2012 | Went over results with client regarding options with Unum and social security | 0.7 | $227.50 |
| 6/7/2012 | Helped client with response to Unum | 0.3 | $97.50 |
| 6/25/2012 | Reviwed Unums documentation, spoke with client | 0.3 | $97.50 |
| 7/3/2014 | Reviewed Unum letter and discussed with client | 0.3 | $97.50 |
| 7/8/2014 | Reviewed Unum letter and discussed with client | 0.2 | $65.00 |
| 7/15/2014 | Client to receive payments from stock disbursement | 0.2 | $65.00 |
| 7/24/2014 | Went over social security information to build suit against Unum | 0.4 | $130.00 |
| 8/7/2014 | Reviewed paperwork regarding indemnification agreement | 0.4 | $130.00 |
| 8/16/2014 | Met with client to discuss her concerns over her estate | 1.3 | $422.50 |
| 8/25/2014 | Client met and discussed new bankruptcy case, her budget, her will concerns, her stocks, her outstanding bill with us | 1.6 | $520.00 |
| 8/25/2014 | Opened New Bankruptcy Case | 0.1 | $0.00 |
| | **Outstanding Balance** | | **$40,395.50** |
| 5/14/2005 | Application of Retainer | | $500.00 |

| 11/14/2005 | Payment by Client | $1,400.00 |
| 8/16/2006 | Payment by Client | $1,600.00 |

Balance as of 8/31/2014                                $36,895.00

*Staffing Rates

| Nnika E. White | $325.00/per hour |
| Associate Attorney | $200.00/per hour |
| Staff Paralegal | $135.00/per hour |

# Law Offices of White & Associates

### NNIKA E. WHITE
**ATTORNEY AT LAW**

*South Side – Main Office*
**9101 MIDLOTHIAN TURNPIKE, #800**
**RICHMOND, VIRGINIA 23235**

| | |
|---|---|
| TELEPHONE | (804) 377-9431 |
| FAX | (804) 377-9434 |

## DISBURSEMENT OF PROCEEDS

For:   Professional Legal Services as Counsel for Tamara Crews.

| | |
|---|---|
| **CURRENT OUTSTANDING BALANCE** | **$36,895.00** |
| Proceeds of receipts from stock inheritance (9/10/2014) | $25,128.01 |
| | $24,946.57 |
| **TOTAL RECEIVED** | $50,074.58 |
| | |
| **FUNDS CREDITED TO TAMARA CREWS** | $50,074.58 |
| Bankruptcy Filing Fee of $679.00 | S   679.00 |
| Distribution of Future Bankruptcy Payments $1,875.00 | S  1,875.00 |
| | $47,520.58 |
| | |
| **LAW OFFICE OF WHITE AND ASSOCIATES FEES** | $33,490.58 |
| **BALANCE OF TOTAL PORTION OF FUNDS FOR TAMARA CREWS** | $14,030.00 |

## BALANCE STILL OUTSTANDING FOR FIRM   $3,404.42

## IN THE UNITED STATES BANKRUPTCY COURT
## OF THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| _____ | ) | |
| In re:  TAMARA SUE CREWS, | ) | Case No. 12-31264-KLP |
| | ) | Case No. 14-35243-KLP |
| Debtor. | ) | Chapter 13 |
| | ) | |
| _____ | ) | |
| | ) | |
| JUDY A. ROBBINS, | ) | |
| | ) | |
| United States Trustee for Region Four, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TAMARA SUE CREWS | ) | |
| and | ) | |
| NNIKA E. WHITE | ) | |
| and | ) | |
| THE LAW OFFICE OF WHITE & | ) | |
| ASSOCIATES, PLLC | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

### RESPONDENT'S ANSWER TO UNITED STATES TRUSTEE'S MOTION TO EXAMINE

Comes now, before the Honorable Court, the Respondents, Tamara Crews ("Crews") and Nnika

White ("White") and aver as follows:

Respondents respectfully represent:

1.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C §157 and

1334, and this matter is a core proceeding under the Bankruptcy Code.

2.     Respondents admit the statements in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 16,

17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 36, 54,  and 58.

### PRELIMINARY STATEMENT

3.     White denies the allegations in paragraphs 12, 13 and 15 and demands strict proof

thereof as White asserts that the allegations within the VSB Certification are mis-

leading, false and not proven.

4.     White admits from paragraph 14 that there is a hearing scheduled for November

20, 2015 in which a Trial will occur on the VSB Certification as White is

confident the VSB Certification will be dismissed.

5.     Respondents admit the statement in paragraph 20 to the extent that at the time of

Crews 2012 and 2014 filings, and White in both of the Respondents opinions was

not a creditor of debt based upon agreements between Crews and White.

6.     Respondents admit the statement in paragraph 28 to the extent it was an oversight

on the voluntary petition but always fully acknowledged in Court and with any

party that this was a second bankruptcy.

7.     Respondents admit the statement in paragraphs 37, 38 and 39 only to the extent

that it summarizes a position taken by the United States Trustee and deny the

allegations as to any wrong doing on the actions of the Respondents.

8.     Respondents and more specifically White deny the allegations in paragraphs 40-

53 as the United States Trustee is citing the VSB Certification as facts versus

allegations not proven true in its current nature and form.  White has never taken

advantage of Crews nor has Crews taken advantage of White.  White never

intentionally falsely provided information to the Bankruptcy Court and at all

times past, present and future has had Crews interest in mind.

9.      Respondents and more specifically White adamantly deny the allegation in paragraphs 55 and 56 demands strict proof thereof.

10.    The allegations in paragraph 57 (a-e) consists of a recitation from the Virginia Rules of Professional Conduct of Rule 1.1, 1.7, 3.3, 4.1 and 8.4, and as such Respondents are not required to admit or deny the allegations.

11.    Respondents deny the allegations in paragraphs 59-63 and demand strict proof thereof.

12.    Respondents can neither admit nor deny the allegations in paragraphs 64 as it is a legal conclusion of the United States Trustee.

13.    Respondents and more specifically White deny the allegations in paragraphs 65-75 and demand strict proof thereof.

14,    Respondents can neither deny nor admit the statements in paragraphs 76 and 77 as they are legal conclusions of the United States Trustee.

15.    Respondents deny the allegations in paragraph 78 and White specifically indicates that all funds from the $33,400 that were paid to the Law Firm of White & Associates have been returned either to Crews or to the Chapter 13 Trustee. Crews had a large portion of her income reduced by a right of set off in the amount of $1425 a month from October 2014 to the present and as such, would not have been able to keep up with her house nor her bankruptcy plan.  Even if placed on the schedules Crews would have used the funds to offset the reduction of her income and as facts and amended schedules will show it will balance out her income and expenses.

16.     Respondents can neither deny nor admit the statements in paragraph 79-91 as they

are legal conclusions of the United States Trustee, or recitations of the

Bankruptcy Code/Rules, or Collier Sections.

17.     Respondents deny the allegations in paragraphs 92-96 and demand strict proof

thereof.

18.     Any and all allegations not specifically admitted are denied and therefore the

Respondents demands strict proof thereof.  Furthermore, the Respondent notes

their opposition to any waiver of Rule 4001(a)(3) of the Federal Rules of

Bankruptcy Procedure.

19.     Respondents will additionally file a memorandum of law supporting this Answer.

WHEREFORE, Respondents pray that the Court deny the relief sought by the

United States Trustee in their Motion, and specifically: (1) that White not be disgorged of

all compensation paid from the bankruptcy cases, (2) that White not be sanctioned

monetarily, (3) that White not be suspended from the practice of law before this Court,

and  (4) find no basis for the Motion to Examine and dismiss this Motion accordingly,

and for such further and other relief as the Court shall find appropriate and just.

Respectfully Submitted,

Tamara Sue Crews, Nnika E. White and The
Law Office of White and Associates, PLLC

/s/ Nnika E. White -VSB 47012
Counsel for Respondents

SEEN AND AGREED:

/s/ Tamara Sue Crews
Tamara Sue Crews

Nnika E. White, Esquire
Law Offices of White & Associates, PLLC
9101 Midlothian Turnpike, Ste. 800
Richmond, Virginia 23235
(804) 377-9431 Phone
(804) 377-9434 Facsimile

<u>PROOF OF SERVICE</u>

I hereby certify that a copy of the foregoing Answer was mailed electronically CM/ECF, facsimile or via first class pre-paid mail on this date to the United States Trustee, appointed Chapter 13 Trustee, and all necessary parties in interest in the above case.

Date: October 20, 2015                          /s/ Nnika E. White-VSB 47012
                                               Counsel for Respondents