IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: MARK F. WHITE,            Case No. 14-36232-KRH
       NNIKA E. WHITE,            Chapter 13
            Debtors.                 Trustee: Wade

## ANSWER

COMES NOW the Debtors, by Counsel, to answer the Motion to Convert to a Chapter 7 (the "Motion") filed by the Chapter 13 Trustee, Suzanne Wade (the "Movant"), as follows:

1. The Debtors admits the allegations contained in Paragraphs 1, 2, and 3.
2. The Debtors admit the allegations contained in Paragraph 4 and 5, but states that each time an amended plan was filed something was changed in the plan. The first time the plan was amended it went from a 5% plan to a 100% plan. The reason why the first plan was filed a lower percentage was to give the creditors time to file their proof of claims. The Debtors could not afford for every creditor to be paid at 100%, but the second mortgage company agreed not to file a proof of claim and as such the Debtors could then do a 100% plan. The next plan changed the payment plan to make the payments more reasonable. The third plan added post petition mortgage payments to it as agreed through a consent Order. The fourth plan Debtor added a creditor but attempted to keep the payment plan the same. The fifth plan filed on November 2, 2015 allowed the Debtors to catch up their payments to the Movant. When individuals whether single or joint file a bankruptcy they should be allowed the rights to amend their plan when appropriate in and to the interest of all parties. The last plan should take care of the default with the Movant and Debtors have already sent off a payment in recognition of that plan. The Debtors are very committed to completing this bankruptcy.
3. The Debtors admit in part and deny in part statements contained in Paragraph 6, and demand strict proof thereof. The Debtor, Nnika E. White, runs The Law Office of White and Associates. In September 2014 Ms. White filed a second chapter 13 bankruptcy for a client Tamara Crews. Ms. White represented that client since 2005 and the client had a significant bill. It is clear that Ms. White had a large outstanding bill with the client before the client filed her initial chapter 13 bankruptcy in 2012. Ms. White had agreed

with the client that she would erase her bill with the client upon the filing of the chapter 13 bankruptcy. She did so by and with an agreement with Ms. Crews. Ms. White at that point did not consider herself a creditor. Ms. Crews case then dismissed. Ms. White did not report the inheritance gained in September 2014 because she felt it was after the 180 days since the filing of the initial chapter 13 case. The agreement between Ms. White and Crews indicated that the debt would come back if her case was dismissed. Ms. Crews wanted to pay Ms. White's fee but she needed to immediately re-file. Ms. White attempted to do what was best in the clients interest. Ms. White had another agreement with the client done that again wiped out her remaining balance. The reason the fee was not reported was because Ms. White took the position that her fee was based upon contemporaneous billing and as such did not have to be reported. That is the stance almost all the attorneys take in our area regarding attorneys fees paid by clients before filing. For example, it is rare divorce attorneys, criminal attorneys or defense attorneys fees are even mentioned on the statement of financial affairs due to this reason.
The funds that were initially received was disbursed to the firm and the firm used the fees of $33,400 towards firm expenses and debts. It went along in combination with other earned fees of the firm. It did not pass directly to Ms. White as her income. In August of 2015 the Law Firm of White and Associates settled a personal injury case. Ms. White has always been upfront with the US Trustees office and the Chapter 13 Trustee's in any case she has had. She has always cooperated if more information was needed and she has always been a hard worker for her clients in getting cases confirmed and discharged appropriately. Ms. White did not want there to be any mis-givings about the money that was taken. She believed she was right at the time of the second filing of the client, but she did not want anything bad to happen to the client's case and she did not want the appearance that she had purposefully or intentionally done anything wrong either. So Ms. White from the law firm's operating account sent the $27,225 to her client's Chapter 13, Carl Bates. First, the reason it was $27,225 and not the $33,400 is because the law firm returned the difference directly to the client in the spring of 2015. Thus all the money from the $33,400 has now left the hands of the law firm. Second, Ms. White did not personally receive the $27,500 nor personally give the firm $27,225 in order to pay back Ms. Crews. The initial funds were accepted by the law firm and the return of the funds

were completed by the law firm. It was not the Debtors personal income that went to Mr. Bates. It is not a preference when the funds were not Mr. or Mrs. White's personal income. Ms. White was very lucky and fortunate to have the case settle, otherwise there would not have been the funds to even consider the return of the money that Ms. White had earned. If Ms. White had not turned over those funds, the money would have been used for firm expenses and would not have gone to either of the Debtors personally. Ms. White was attempting to have the forethought to protect the funds and now she is being judged for it wrongly by the Movant and US Trustee.

4. The Debtors deny the allegations contained in Paragraphs 7 and 8, and demand strict proof thereof. Debtors income, specifically Ms. White's income will be in flux until the new year. Ms. White has been cooperating with the US Trustee upon every request made by them. Ms. White had some additional firm expenses that made Ms. White's income become strained at the end of 2014 and in 2015. The answer at that time should have been for Ms. White to let go of the attorneys and focus on paying those expenses back. Ms. White was trying to protect her employees. Ms. White lost two attorneys in August 2015 and as such her income changed again. Ms. White had to reduce her incoming clients in order to currently handle to the best of her ability the current clients the firm had. Ms. White is currently working a Court Calendar that support 3 full time attorneys by herself and it is very difficult to say the least. Thus, the income coming into the firm has changed and is significantly lower. Additionally, the income coming in from the Movant's office has significantly changed over the last year. Whereas the law firm is used to receiving $25,000-30,000 a month from the disbursements, the combined checks have been reduced to a surprising $10,000 or so a month. This is a significant decrease. Movant indicates that the value on Debtors schedules for the law firm is zero and that is because even with the outstanding money coming into the firm with the Chapter 13 Trustee's disbursements and clients payments, the outstanding expenses of the firm would put the equity of the firm to the negative.

5. Any and all allegations not specifically admitted are denied and therefore the Debtors demand strict proof thereof. Furthermore, the Debtors note for the record their opposition to any waiver of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

6. The real estate property referenced in the Debtor's schedules serves as the Debtors' principal residence, and as such, the Debtors' possession of the property is necessary for the effective reorganization of their estate.  The Debtors also reiterate that the Amended/Modified Plan filed on June 9, 2015, cures the post-petition default to the Movant.  If the case were allowed to be converted it would be unjust to not only the Debtors but to the creditors as well.  Debtors would not be able to strip their second lien which was the primary reason for filing.  Meaning that all of the stress of filing anf having to go through all the trials and tribulations of being examined by the US Trustee and putting themselves out in the public eye would have been for nothing.  The Debtors cannot strip their second lien in a chapter 7.  Second, the Debtors would not be allowed to have a discharge in a chapter 7 case.  How is this fair or proper to the Debtor's to forcibly have them give up their discharge.  This places them in a worse position then when they originally filed.  The current plan has arrears in the plan and it is protecting the house.  The house is worth less than the first mortgage at the moment and as such it cannot be sold for anything.  Which means the conversion to a chapter 7 would force a foreclosure on the Debtors and displace them and their two small children, an 8 and 5 year old.  The loss of the house will be to no benefit to the creditors as they would receive no funds from it, it would just put the Debtor's on the street. The suggestion of the Movant and any party in agreement with the Movant to convert the case is purposefully and intentionally attempting to harm the Debtors.  The Debtors proposed plan pays the currently filed proof of claims filed by the creditors at 100%. There is no better payout with a chapter 7 trustee it would be significantly less.

7. The Debtors deny the allegations contained in Paragraphs 9, and demand strict proof thereof.   As mentioned above, the creditors will get over a 50% lower disbursement at a minimum, the Debtors would not be entitled to a discharge and the Debtors would not be able to strip the second lien to their house.  The law firm has significant tax debt that they were currently in the process of securing payment plans.  The law firm has outstanding contracts for many things, including but not limited to copy contracts, software contracts, rent, etc.  Debtors would suggest there would not be any funds for the Trustee to recover.  Finally, at this point the US Trustee is arguing against itself.  They indicated at first to

return the money to Ms. Crews Trustee (which was done) and now they are arguing not to return it.

8. Furthermore, the Movant has not shown the irreparable harm necessary to justify the conversion to a Chapter 7. Rather the Debtors have shown significant irreparable harm that will occur if the conversion were to occur. Debtor's would lose their house, to no value of the bankruptcy estate and the creditors would get an amount way less than 100% payout.

WHEREFORE, the Debtors pray that this Court enters an Order dismissing the Motion, and granting all other relief that this Court deems just and proper, as well as the right to enlarge and or modify the response to the Motion if necessary.

Respectfully Submitted:

MARK F. WHITE
NNIKA E. WHITE

/s/ Nnika E. White
Nnika E. White, Esq. (VSB #47012)
Law Office of White & Associates
9101 Midlothian Turnpike, Suite 800
Richmond, VA 23235
(804) 377-9431
*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2015, I mailed the foregoing Answer via CM/ECF to the Chapter 13 Trustee at station08@ricva.net, US Trustee and via first-class mail to all other necessary parties.

/s/ Nnika E. White
Nnika E. White, Esq.